

**SIGNED THIS 12th day of August, 2026**

THIS MEMORANDUM OPINION HAS BEEN ENTERED
ON THE DOCKET. PLEASE SEE DOCKET FOR
ENTRY DATE.

_____
Paul M. Black
UNITED STATES BANKRUPTCY JUDGE

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

|  |  |  |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
|  | ) |  |
| Jennifer M. Pearson | ) |  |
|  | ) | Case No. 25-70769 |
| Debtor. | ) |  |
|  | ) |  |
| Mary V. McGrath, | ) |  |
|  | ) |  |
| and | ) |  |
|  | ) |  |
| Matthew S. Pearson, | ) |  |
| Plaintiffs | ) |  |
|  | ) |  |
| v. | ) | Adv. Proc. No. 25-07027 |
|  | ) |  |
| Jennifer M. Pearson, | ) |  |
| Defendant. | ) |  |

## Memorandum Opinion

This matter comes before the Court on the Complaint filed by Mary V. McGrath ("Mary")

and Matthew S. Pearson ("Matthew" and collectively, "Plaintiffs"), by counsel, and the Response

thereto and related Memorandum filed by Jennifer M. Pearson ("Debtor"), by counsel.  The events

and related arguments prompting this action stem from a separation agreement between the Debtor

and her now deceased ex-husband, and a provision contained therein governing the distribution of life insurance proceeds upon his death. This case presents two distinct issues. First, when the statute of limitations would prevent the Plaintiffs from bringing claims in state court and there is a final state court order to that effect—but that ultimately awarded the Plaintiffs a default judgment on other grounds—is the bankruptcy court barred from considering the underlying conduct giving rise to the debt for dischargeability purposes under 11 U.S.C. § 523(a)? Second, assuming the bankruptcy court is not barred, did the Plaintiffs sufficiently establish that the debt should be determined nondischargeable under 11 U.S.C. § 523(a)(2), 11 U.S.C. § 523(a)(4), and/or 11 U.S.C. § 523(a)(6), or that a declaratory judgment should be entered under 11 U.S.C. § 523(a)(5) designating the debt as nondischargeable or, in the alternative, under 11 U.S.C. § 523(a)(15)? For the reasons herein, the Court finds it is not precluded from considering the underlying nature of the debt given the state court's failure to do so, and the Plaintiffs sufficiently established that the debt is nondischargeable under section 523(a)(5) or, alternatively, under section 523(a)(15).

### *Jurisdiction*

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(a) and the referral made to this Court by Order from the District Court on December 6, 1994 and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

### *Factual Background*

### I.      **History of the Case Prior to the Litigation**

The Debtor is the mother of Mary and Matthew, the Plaintiffs in this case. The Debtor was previously married to the Plaintiffs' father, Edward S. Pearson, III ("Edward"). Edward and the Debtor were legally divorced on November 8, 2010 when the Circuit Court for the City of

2

Fredericksburg, Virginia, entered a final decree of divorce. Pls.' Ex. 1. Prior to the entry of the divorce decree, the Debtor and Edward entered into a separation agreement which contained the following provision regarding Edward's life insurance policy that the Debtor owned with Prudential Financial ("Prudential"): "The Husband's policy shall list the parties' children as beneficiaries and shall be maintained by the Wife, who shall pay all premiums thereon, until the parties' minor child graduates from college and may continue after that at the Wife's discretion." Pls.' Ex. 2 at ¶ 18. The "minor" referenced in this provision is Mary. The final decree of divorce incorporated the terms of the separation agreement.

In the fall of 2011, Mary began college. Edward—who the parties testified struggled with depression—passed away on March 8, 2012 during Mary's freshman year of college. Pls.' Ex. 4. On March 31, 2012, the Debtor completed the application with Prudential to obtain the $200,000.00 in life insurance proceeds and named herself as the sole beneficiary under the policy. Pls.' Ex. 3, at 4-6. Despite the obligation to do so under the separation agreement and final divorce decree, the Debtor never changed the beneficiary designation from herself to her children. The Debtor testified that she withdrew all the life insurance proceeds by the end of 2012, in part, to help cover expenses for the Plaintiffs. The extent to which she helped the children was credibly disputed by them.

In May of 2022, the Plaintiffs' paternal aunt discovered a portion of the divorce decree and brought it to Mary's attention. This led Mary to obtain a complete copy of the divorce decree and the separation agreement from the Fredericksburg City Circuit Court. Upon obtaining a copy of the separation agreement, Mary discovered the provision regarding the life insurance proceeds, prompting her to retain counsel. In late 2022, Mary contacted Matthew, informed him that she intended to file a lawsuit against their mother, and asked him to join her as a co-plaintiff. In early

3

2023, the Plaintiffs filed a state court lawsuit against the Debtor in Fredericksburg City Circuit Court ("State Court Suit").

## II.        The Fredericksburg City Circuit Court Proceedings

The Plaintiffs alleged four causes of action in the State Court Suit: Breach of Contract – Third Party Beneficiaries, Conversion, Unjust Enrichment, and Constructive Trust and Equitable Assignment. Pls.' Ex. 5, at 3-7. In response, the Debtor, by state court counsel, filed a plea in bar asserting that all claims were barred by the statute of limitations and filed a demurrer as to all counts alleging the amended complaint failed to state a claim upon which relief may be granted. DR's Ex. BB, ¶¶ 11-12.

After a hearing, the Fredericksburg City Circuit Court issued a Letter Opinion on February 28, 2024 granting the plea in bar in part and denying it in part, and overruling the demurrer as to the remaining count. DR's Ex. EE. Specifically, the state court found that since the "suit was not brought until more than 10 years after the receipt of the funds by the defendant" the plea in bar should be granted as to the breach of contract claim "as the five-year statute of limitations bars any claim on contract from, at best, 2012 when the proceeds were claimed by the [Debtor]." *Id.* at 2. The state court also granted the plea in bar as to the conversion claim—as the pleading alleged a conversion in 2012, no applicable tolling provision applied, and the suit was brought outside the statute of limitations. The plea in bar was further granted as to the unjust enrichment claim because the statute of limitations runs from the date the conversion or enrichment occurred, not discovery of it, so that claim was barred. *Id.* However, the state court overruled the plea in bar as to the constructive trust claim finding that no statute of limitations existed as to that claim. *Id.* The state court then overruled the demurrer as to the constructive trust and equitable assignment claim, stating "[a] constructive trust may be imposed on funds fraudulently or innocently received where

4

the principles of equity require….The allegations in the complaint, if proven, are sufficient to overcome the demurrer." *Id.* (citing *Faulknier v. Shafer*, 264 Va. 210 (2002)).  On January 13, 2025, the day before the scheduled trial of the matter, the jury trial was removed from the docket and the State Court Suit was continued for further proceedings.  DR's Ex. DD.  It apparently came to light at that time the defendant in the state court case, now the Debtor herein, never filed an answer to the state court complaint.

On January 24, 2025, the Plaintiffs filed a Motion for Default Judgment in the state court action, and on February 7, 2025, the Debtor filed a Motion for Leave to file a Late Answer.  Pls.' Ex. 6.  After holding a hearing on both motions, the substance of which this Court is not privy to, the Fredericksburg City Circuit Court entered a final order on February 24, 2025 disposing of the State Court Suit.  Notably, although the only remaining count was the constructive trust and equitable assignment claim—a remedy in equity—the state court nevertheless awarded the Plaintiffs a monetary default judgment against the Debtor in the amount of $200,000, plus interest accruing from May 1, 2012 through January 31, 2025, for a total judgment of $418,821.41 ("Fredericksburg Judgment").  *Id.* at 2.  The Plaintiffs then docketed the judgment in the Roanoke City Circuit Court to obtain a lien on the Debtor's primary residence.

### III.    The Bankruptcy Proceedings

#### a.    The Bankruptcy Pleadings

On August 26, 2025, the Debtor filed a voluntary Chapter 7 petition in this Court listing the $418,821.41 Fredericksburg Judgment on Schedule D secured by the Debtor's primary residence.   Prior to the entry of the discharge order, the Debtor filed a Motion to Avoid Lien pursuant to 11 U.S.C. § 522(f)(2),[1] which if granted, would subject a large portion of the Plaintiffs'

---

[1] The Court continued the hearing on the Motion to Avoid Lien to September 28, 2026 pending resolution of this matter.

5

claim to the discharge provisions of the Bankruptcy Code and limit the Plaintiffs' ability to collect on the debt. Case No. 25-70769, ECF No. 11. In turn, on November 24, 2025, the Plaintiffs filed the Complaint initiating this adversary proceeding seeking to have the Fredericksburg Judgment declared nondischargeable. A.P. ECF No. 1.

The Plaintiffs seek a determination that the Fredericksburg Judgment is nondischargeable under section 523(a)(2)(A), section 523(a)(4), and/or section 523(a)(6) of the Bankruptcy Code, and seek a declaratory judgment that the claim is nondischargeable under section 523(a)(5) or, in the alternative, under section 523(a)(15) of the Bankruptcy Code. *Id.* at 1. The Plaintiffs allege that the Debtor, who at the time was fully aware that the separation agreement and divorce decree required her to list the Plaintiffs as beneficiaries of the life insurance proceeds, nevertheless filled out the necessary paperwork to obtain the $200,000.00 in life insurance proceeds and affirmatively failed to disclose that the insurance had been assigned–thus, designating herself as the sole beneficiary to such proceeds. *Id.* at ¶¶ 18-19. The Plaintiffs further allege that the Debtor knew she had assigned her right to the proceeds and that she knowingly made the statement on the life insurance application to Prudential that she had not assigned her right with the intent to defraud Prudential and Plaintiffs of the $200,000.00. *Id.* at ¶¶ 20, 22. The Plaintiffs, having no reason to know or believe they had any entitlement to the policy's life insurance proceeds, relied on the Debtor's failure to inform them about their designation as the policy's beneficiaries, and upon discovering their entitlement to the proceeds in 2022, acted promptly to initiate the State Court Suit and obtain the Fredericksburg Judgment based on the Debtor's fraudulent actions. *Id.* at ¶¶ 25-27.

As a direct and proximate result of the Debtor's fraud and failure to designate the Plaintiffs as beneficiaries, the Plaintiffs allege they sustained actual damages as they did not have additional

6

funds to support themselves and that the Debtor acted with substantial certainty at the time such harm would result. *Id.* at ¶¶ 34, 37-38, 42-44.

As to the section 523(a)(5) claim, the Plaintiffs allege that since the Fredericksburg Judgment is for a debt designated by the separation agreement as alimony and is deemed by such agreement to be a nondischargeable domestic support obligation should bankruptcy occur, it is, therefore, nondischargeable under subsection (a)(5), or alternatively (a)(15), as it is debt owed by the Debtor to her children incurred in connection with a separation agreement and/or divorce decree. *Id.* at ¶¶ 10, 34, 57; *see* Pls.' Ex. 2, at ¶¶ 22-23.

The Debtor filed a response to the Complaint ("Answer") principally asserting that she never possessed any intent to deceive or defraud any party—including the Plaintiffs—because, prior to the execution of the separation agreement, she contends she explicitly instructed her divorce attorney to remove the life insurance provision; however, her divorce attorney failed to do so, and the Debtor testified she was unaware of this failure. DR's Ans. at ¶¶ 18, 20-23, 25-27, 30-31, 43-44. Accordingly, the Debtor, at all relevant times, believed that she was the beneficiary of the life insurance proceeds. Therefore, her "failure to designate [the] Plaintiffs as beneficiaries was due to error, and was not 'knowing and intentional,' " and was not committed with the intent to defraud or to deceive either Prudential or the Plaintiffs. *Id.* at ¶¶ 32-33. Moreover, the Debtor asserts that the life insurance proceeds she received were used to support Mary and Matthew.[2] Thus, the Plaintiffs were not deprived of any benefit from the proceeds and suffered no damages. *Id.* at ¶¶ 34, 38, 43. Even assuming the Plaintiffs suffered damages, the Debtor argues the Plaintiffs do not hold a claim in bankruptcy because the underlying conduct giving rise to the Fredericksburg Judgment is barred by the applicable statute of limitations, even though such judgment was

---

[2] As discussed earlier herein, this was credibly disputed by the Plaintiffs.

obtained by default. *Id.* at ¶¶ 25, 48, 51, 55. Alternatively, if a claim does exist, the Debtor's conduct does not support a finding that the claim should be nondischargeable under section 523(a)(2) because she did not act with the requisite malice and intent to defraud, and the claim is not in the form of domestic support. *Id.* at ¶¶ 37-38, 42-44, 48, 51, 55.

During a conference call with the parties prior to the trial, the Court asked the parties to be prepared to address what impact, if any, the State Court Suit and the Fredericksburg Judgment have on this Court's ability to decide the issues in this case under a theory of collateral estoppel. The Debtor thereafter filed a Memorandum as to Collateral Estoppel and Trial Memorandum ("Memorandum") on July 13, 2026. A.P. ECF No. 41.

In the Memorandum, the Debtor argues that the Plaintiffs are collaterally estopped and barred from seeking declaratory relief that the Fredericksburg Judgment be declared nondischargeable pursuant to section 523(a)(5), or alternatively section 523(a)(15), because that demand is based on the terms of the separation agreement and the state court already ruled that contract claim was barred due to the applicable statute of limitations. *Id.* at 2. As to the section 523(a)(4) claim, the Debtor argues that claim is based entirely upon conversion, and since the state court held the conversion claim was barred by Virginia's applicable statute of limitations, collateral estoppel applies to the bankruptcy claim and it should be dismissed. *Id.* Finally, the Debtor argues the section 523(a)(2)(A) and section 523(a)(6) claims are barred for two separate reasons. First, under Virginia state law, a claim for civil fraud must generally be brought within two years; however, Virginia recognizes the "discovery rule" to civil fraud to toll the statute of limitations, so the period does not begin until the fraud is actually discovered or should have been discovered. *Id.* (citing Va. Code Ann. §§ 8.01-243(A), 249). Nevertheless, the Debtor argues the "discovery rule" does not toll the statute of limitations to bring the fraud or willful and malicious

8

injury claims within the two-year statute of limitations because the state court considered the issue of tolling in the context of the conversion claim and ruled against the Plaintiffs.  Accordingly, the Debtor argues that ruling should apply equally to bar any fraud claim, even under a tolling theory, and that any willful or malicious injury claim is likewise barred by the statute of limitations.  *Id.* Second, the Debtor argues the Plaintiffs are barred by the statute of limitations as to these claims because "[i]n paragraph 26 of the Complaint, Plaintiffs assert that they first became aware of the claim in 2022."  *Id.*  However, the Plaintiffs' first allegation of fraud or willful or malicious injury was not made until the Complaint was filed on November 24, 2025—at least two years and ten months after discovery and well outside the limitations period, even applying the "discovery rule." Thus, even if the state court's ruling does not bar these claims under a collateral estoppel theory, the Debtor contends the claims are independently barred based on the statute of limitations regardless of the state court's holding as to the state law conversion claim and tolling finding.  *Id.*

b.  The July 14th, 2026 Trial

A trial was held by this Court on July 14, 2026 at which the Plaintiffs, the Debtor, and Jason Copp, the Debtor's oldest son and the Plaintiffs' half-brother, appeared and testified.  Mary testified that she was nineteen and attending college at Randolph-Macon College when Edward passed away.  Mary denied having any knowledge—either from Edward or any other source—of the separation agreement and her entitlement to life insurance proceeds prior to the discovery of the divorce decree.  Mary denied living at her mother's home once she began college and testified that the only financial assistance she received from her mother after 2012 was $5,000.00 paid toward her wedding, and there was never any mention of paying that money back.

Matthew testified that, although he was asked to sign a cover page to the separation agreement as an attesting witness, he was not privy to the contents of the separation agreement.

9

Matthew further testified that the only money he received from his mother was $1,000.00 for rent and the initial payment for his massage school of approximately $3,500.00 to $5,000.00. Matthew stated there was no agreement or discussion between him and the Debtor to pay that money back. Matthew also described his mother as being "in shock" and "angry and upset" when he called her in 2022 to inform her of the Plaintiffs' intent to file a civil suit against her based on the separation agreement.

In her testimony, the Debtor strenuously asserted that when she initially received the proposed separation agreement and saw the life insurance provision contained in paragraph eighteen that she immediately instructed her divorce attorney to take the provision out. Upon Edward's death, the Debtor admitted that she applied for the $200,000.00 in proceeds and claimed herself as the beneficiary; however, the Debtor stated she only did so because she believed the provision had been removed. The Debtor, nevertheless, conceded that she did not read the agreement before she signed it. The Debtor's oldest son, Jason Copp, testified that he believed the Debtor was unaware of the provision regarding the life insurance proceeds prior to receiving Matthew's phone call. The Debtor also testified that, out of the life insurance proceeds, she spent at least $173,800.00 from January 3, 2012 until May 24, 2023 on expenses for Mary and Matthew. *See* DR's Ex. A. Again, the Plaintiffs credibly denied the validity of the vast majority of these expenditures.

### *Discussion*

I.  **The Statute of Limitations and Collateral Estoppel**

The Debtor's first argument rests on the assertion that the Plaintiffs hold no claim in bankruptcy because the underlying basis for the Fredericksburg Judgment is premised on a fraud claim based on the separation agreement, and under Virginia state law, any such claim would be

barred by the statute of limitations.  Furthermore, since the Fredericksburg City Circuit Court already determined the claims at law—for breach of contract, conversion, and unjust enrichment—were barred by the statute of limitations, that determination is binding and the Plaintiffs are collaterally estopped from arguing those claims, or any similar claims that would also be barred by statute of limitations, as bases for their section 523(a)(2), (4), or (6) claims.

The doctrine of collateral estoppel "precludes relitigation of an issue decided previously in judicial…proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in an earlier proceeding." *In re McNallen*, 62 F.3d 619, 624 (4th Cir. 1995).  The doctrine of collateral estoppel is generally applicable to dischargeability proceedings in bankruptcy.  *Grogan v. Garner*, 498 U.S. 279, 284 (1991).  When determining the preclusive effect of a state-court judgment in the context of a dischargeability action, the bankruptcy court must apply the forum state's law on collateral estoppel—here, Virginia state law.  *McNallen*, 62 F.3d at 624 (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 481-82 (1982); *Bugna v. McArthur (In re Bugna)*, 33 F.3d 1054, 1057 (9th Cir. 1994)).

Under Virginia state law, the following requirements must be met for the doctrine of collateral estoppel to be invoked:

> (1) the parties to the prior and subsequent proceedings, or their privies, must be the same, (2) the factual issue sought to be litigated actually must have been litigated in the prior action, (3) the factual issue must have been essential to the judgment in the prior proceeding, and (4) the prior action must have resulted in a judgment that is valid, final, and against the party against whom the doctrine is sought to be applied.  In addition to these elements, there also must be "mutuality," *i.e.*, a litigant cannot invoke collateral estoppel unless he would have been bound had the litigation of the issue in the prior action reached the opposite result.

11

*Scales v. Lewis*, 261 Va. 379, 382, 541 S.E.2d 899, 901 (2001) (internal citations omitted). Applying collateral estoppel as to the state court's finding on the statute of limitations issue to bar the section 523(a)(2), (4), or (6) claims is flawed for two separate reasons.

First, the Plaintiffs have established a debt, as their state law claim has been reduced to a valid, final judgment. *See In re Gergely*, 110 F.3d 1448, 1453 (9th Cir. 1997); *see also In re McKendry*, 40 F.3d 331, 337 (10th Cir. 1994). Second, the Plaintiffs timely filed their Complaint to have this established debt declared nondischargeable in compliance with limitations periods set forth by federal bankruptcy law, and Virginia's statute of limitations should not disrupt rights created under the Bankruptcy Code. *McKendry*, 40 F.3d at 337 (holding that once "the debt has already been established…the state statute of limitations is immaterial. The only applicable limitations period is the sixty day period provided by § 523(c)"); *CBR, Inc. v. Naff (In re Naff)*, No. 96-21436, A.P. No. 96-2112, 1997 WL 1088126, at * 8 (Bankr. E.D. Va. July 18, 1997) (holding "so long as there exists, on the date the bankruptcy petition was filed, a legally enforceable claim, the time within which the creditor may seek a determination that the debt is non-dischargeable under one of the exceptions in § 523 of the Bankruptcy Code is governed by the Bankruptcy Rules and not by any non-bankruptcy statute of limitations.").

Although the Fourth Circuit has not addressed how to reconcile the state law statute of limitations in the context of section 523(a) nondischargeability proceedings, the Tenth Circuit's approach in *In re McKendry* is especially informative here,[3] providing:

> We…find two distinct issues in a nondischargeability proceeding. The first, the establishment of the debt itself, is governed by the state statute of limitations—if

---

[3] Neither this Court nor the Fourth Circuit has previously addressed this procedural issue; however, the bankruptcy judges for the Eastern District of Virginia have consistently followed *McKendry* when dealing with this issue. *Ferguson Enterprises, LLC v. Blubaugh (In re Blubaugh)*, No. 23-10752, A.P. No. 23-01045, 2024 WL 958282, at *4 (Bankr. E.D. Va. March 5, 2024); *Metzger v. Hardey (In re Hardey)*, No. 04-10199, A.P. No. 04-1075, 2005 WL 8149584, at *6 (Bankr. E.D. Va. Apr. 13, 2005); *Ullman v. Boyer (In re Boyer)*, No. 98-34241S, A.P. No. 98-3112, 1999 WL 33954735, at *7 (Bankr. E.D. Va. Aug. 24, 1999); *CBR, Inc. v. Naff (In re Naff)*, No. 96-21436, A.P. No. 96-2112, 1997 WL 1088126, at *8 (Bankr. E.D. Va. July 18, 1997).

12

suit is not brought within the time period allotted under state law, the debt cannot be established. However, the question of the dischargeability of the debt under the Bankruptcy Code is a distinct issue governed solely by the limitations periods established by bankruptcy law.

*McKendry*, 40 F.3d at 337; *See generally Brown v. Felsen*, 442 U.S. 127 (1979). Since the issuance of the *McKendry* opinion, the Ninth Circuit and other courts adopted this approach to reject the exact argument the Debtor makes here: that the failure to bring a fraud action before the applicable state law limitations period expired precludes the Plaintiffs from arguing that fraud is a basis for nondischargeability under section 523(a)(2). *Gergely*, 110 F.3d at 1450, 1453-54 (relying on *McKendry* to reject the defendant-debtor's argument that the plaintiff-creditor, who obtained a state court judgment of $780,282 in damages, was not precluded from bringing a fraud action under section 523(a) despite the expiration of the applicable California limitations period for fraud and the state court's failure to specify the theory under which it awarded the damages); *In re Glunk*, 343 B.R. 754, 760-61 (Bankr. E.D. Pa. 2006) (adopting *McKendry* to reject the plaintiffs' argument the state statute of limitations for fraud barred the section 523(a)(2)(A) claim and to find "[w]hether or not the Plaintiffs asserted a timely fraud claim in the underlying state litigation bears no significance in the bankruptcy court's ultimate determination of the nature of the debt and whether such debt is dischargeable"). The determinative inquiry is whether a valid prepetition state court judgment exists, not whether the state law statute of limitations as to the theory underlying the claim for which the judgment is based has expired. *In re Yerushalmi*, 393 B.R. 288, 294 (Bankr. E.D.N.Y. 2008) (internal citations omitted) ("[I]f a creditor bringing an adversary proceeding under § 523 already has an enforceable state court judgment, he will not be barred from proving the nondischargeability of the debt even if the state statute of limitations for the alleged fraud (or other allegation as the case may be) expired prior to the filing of the debtor's petition."). Having determined that this Court may consider fraud as a basis for nondischargeability despite

the expiration of Virginia's two-year statute of limitations for fraud claims so long as a valid judgment evidencing a debt exists, it must be determined if the Fredericksburg Judgment qualifies as such a judgment.  Va. Code Ann. §§ 8.01-243(A), 249.

The Bankruptcy Code defines "debt" as "liability on a claim."  11 U.S.C. § 101(12).  A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."  11 U.S.C. § 101(5).  In this case, it appears that even the Debtor concedes that the Fredericksburg Judgment qualifies as a "debt" within the meaning of the Bankruptcy Code based on their matured claim to the life insurance proceeds resulting from the separation agreement, Edward's death, and the issuance of the default judgment.  The Plaintiffs then docketed the Fredericksburg Judgment in Roanoke City Circuit Court to obtain a judgment lien on the Debtor's primary residence.  The Debtor does not dispute either the judgment itself or the domestication of it, as she lists a $418,821.41 secured debt on Schedule D to reflect it.[4]  ECF No. 1 at 20.  Although it is perplexing to this Court why the state court judge entered a monetary default judgment on an equitable claim for relief of constructive trust—after all claims for a money judgment were dismissed—neither party appealed the judgment by the applicable deadline under state law.  *See* Va. Code Ann. § 8.01-675.3.  The state court judgment is final.  Accordingly, this Court finds that a valid prepetition judgment exists evidencing the debt.

Since a valid prepetition judgment exists, the final inquiry is whether the Plaintiffs complied with the applicable deadlines and statute of limitations set forth by the Bankruptcy Rules.  In a Chapter 7 case, for nondischargeability claims brought under section 523(a)(2), section 523(a)(4), and section 523(a)(6), the complaint "must be filed within 60 days after the first date

---

[4]  The debt to the Plaintiffs is not listed as unliquidated, contingent, or disputed on Schedule D.

14

set for the § 341(a) meeting of the creditors." Fed. R. Bankr. P. 4007(c); 11 U.S.C. § 523(c). The Debtor's first 341 meeting was scheduled for September 25, 2025. Case No. 25-70769, ECF No. 5. The last day to comply with the sixty-day deadline set forth by Rule 4007(c) was November 24, 2025; the Plaintiffs filed their complaint on that day.[5]

Accordingly, since all of the Plaintiffs' claims were timely filed in compliance with the applicable deadlines set forth by the Bankruptcy Rules and a valid prepetition judgment exists, this Court may consider whether the Fredericksburg Judgment is nondischargeable under section 523(a) despite the doctrine of collateral estoppel.

## II.   The Nondischargeability Claims

When considering exceptions to discharge under section 523(a), courts must construe such exceptions narrowly to protect the Bankruptcy Code's purpose of providing debtors with a fresh start. *Nunnery v. Rountree (In re Rountree)*, 478 F.3d 215, 219 (4th Cir. 2007); *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 130 (4th Cir. 1999) (citing *Century 21 Balfour Real Estate v. Menna (In re Menna)*, 16 F.3d 7, 9 (1st Cir. 1994)). However, courts must be equally concerned with protecting against and deterring the perpetrators of fraud from abusing the Bankruptcy Code. *Id.* (citing *Cohen v. Cruz*, 523 U.S. 213, 217 (1998)). The plaintiff must prove the nondischargeability of the debt under section 523(a) by a preponderance of the evidence. *Grogan*, 498 U.S. at 291; *Faurouki v. Emirates Bank Int'l, Ltd.*, 14 F.3d 244, 299 (4th Cir. 1994). Accordingly, the Plaintiffs must prove by a preponderance of the evidence standard that the Fredericksburg Judgment is excepted from discharge under one of the section 523(a) claims set forth in the Complaint.

---

[5] Although the Bankruptcy Rules do not impose a strict sixty-day deadline for nondischargeability claims brought under section 523(a)(5) and section 523(a)(15), those claims were raised in the same complaint as the other section 523(a) claims. *See* Fed. R. Bankr. P. 4007(c); *see also* 11 U.S.C. § 523(c). The section 523(a)(5) and section 523(a)(15) claims were also brought within sixty days of the first scheduled 341 meeting.

15

a.   11 U.S.C. § 523(a)(2)(A) Claim

Section 523(a)(2)(A) provides that the Bankruptcy Code will not discharge a debtor from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—false pretenses, a false representation, or actual fraud."   11 U.S.C. § 523(a)(2)(A).   The Fourth Circuit has interpreted the statutory language of section 523(a)(2)(A) to require that for a debt to be excepted from discharge under this subsection, "the debtor [must have] used fraudulent means to obtain money, property, services, or credit."   *Rountree*, 478 F.3d at 219. The language "to the extent obtained by" must be read to modify the money, property, services, or credit constituting the debt to narrow the scope of section 523(a)(2)(A) and excludes debts incurred simply as a result of the fraud.   *Id.*

The Fourth Circuit mandates that for a debt to be declared nondischargeable under section 523(a)(2)(A) as arising from false pretenses, false representation or actual fraud, the creditor-plaintiff must prove all of the following elements of common law fraud: "(1) false representation, (2) knowledge that the representation was false [at the time it was made], (3) intent to deceive, (4) justifiable reliance on the representation, and (5) proximate cause of damages."   *In re Sharp*, 340 Fed.Appx. 899, 901 (4th Cir. 2009) (quoting *Rountree*, 478 F.3d at 218); *In re Matkins*, 605 B.R. 62, 87 (Bankr. E.D. Va. 2019).   In this case, the key element is element two.   To satisfy element two, "the plaintiff must prove that the debtor knew or should known that the representation was false when it was made."   *Matkins*, 605 B.R. at 88 (citing *In re Hathaway*, 364 B.R. 220, 234 (Bankr. E.D. Va. 2007); *In re Robinson*, 340 B.R. 316, 347 (Bankr. E.D. Va. 2006) (internal citations omitted)).

In the Complaint, the Plaintiffs made conclusory allegations that the Debtor "clearly knew that her statement to Prudential on the application for the life insurance proceeds that the Policy

16

had not been assigned was false" because the Debtor had agreed with Edward to designate the Plaintiffs as beneficiaries. Pls.' Compl. at ¶ 31. However, the Debtor asserted in her Answer— and continuously reasserted at trial—that she instructed, even demanded, her divorce attorney to take the provision regarding life insurance out. Therefore, she contends she lacked any knowledge that she was not the beneficiary of the proceeds and acted in reliance that the divorce attorney had removed the provision. DR's Ans. at ¶¶ 18, 21, 23, 25, 30-32. Despite knowing the Debtor intended to assert this defense prior to trial, the Plaintiffs failed to provide sufficient evidence, either at trial, through responsive pleadings prior to trial, or through exhibits, that the Debtor knew or should have known such provision had not been removed by her divorce attorney or that the Debtor never instructed her divorce attorney to remove the provision. Indeed, the Plaintiffs did limited discovery and took no depositions.

At trial, the Plaintiffs themselves even conceded that they were not privy to the discussions that occurred surrounding the negotiation of the separation agreement. The only evidence the Plaintiffs provided to rebut the Debtor's claim was Mary's testimony at trial that she knew the only thing her father asked for during the negotiation of the separation agreement was for the children to be the beneficiaries of the life insurance proceeds. However, on cross-examination, she testified the basis of her knowledge was her review of the exhibits in this case many years later and her general knowledge of Edward's character. Additionally, since the Plaintiffs failed to provide any evidence to negate the Debtor's claimed defense regarding removal of the provision, and the Debtor continuously testified under oath at trial that she instructed it be removed and believed it had been, the Court will accept that fact as true, as self-serving as it may be. Accordingly, the Court finds that the Debtor neither knew nor should have known—because the

17

Debtor had no reason to believe her divorce attorney would fail to act as instructed—that the representation to Prudential was false when it was made.  Thus, element two cannot be satisfied.

As discussed above, the Fourth Circuit requires *every* element of common law fraud to be satisfied for a debt to be excepted from discharge under section 523(a)(2)(A).  The Plaintiffs have failed to meet their burden of proving by a preponderance of the evidence that the Debtor knew or should have known that provision contained in paragraph eighteen of the separation agreement regarding the life insurance proceeds was not removed.  Therefore, the Fredericksburg Judgment cannot be declared nondischargeable under section 523(a)(2)(A) and the Plaintiffs' claim is denied on that basis.

    b.   11 U.S.C. § 523(a)(4) Claim

Section 523(a)(4) provides that the Bankruptcy Code will not discharge a debtor from any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  For a creditor to prevail in having a debt declared dischargeable under this subsection on the basis that it arises from fraud or defalcation while acting in a fiduciary capacity, "a creditor must ordinarily make a two-part showing: (1) that the debt in issue arose while the debtor was acting in a fiduciary capacity; and (2) that the debt arose from the debtor's fraud or defalcation."  *In re Strack*, 524 F.3d 493, 497 (4th Cir. 2008) (citing *In re Ansari*, 113 F.3d 17, 20 (4th Cir. 1997)).

The Bankruptcy Code does not define the term "fiduciary;" however, "[c]ourts generally agree that whether a debtor is acting as a fiduciary for purposes of section 523(a)(4) is determined by federal law."  *In re Vito*, 598 B.R. 809, 817 (Bankr. D. Md. 2019) (citing *In re Heilman*, 241 B.R. 137, 155-56 (Bankr. D. Md. 1999) ("It is well-settled that the determination of fiduciary capacity is a question of Federal law."))  In the bankruptcy context, the term "fiduciary" should be

18

construed narrowly. *Id.* Courts in the Fourth Circuit generally require the creation of an express or technical trust prior to the alleged misappropriation of the funds for the defendant-debtor to qualify as a "fiduciary" for purposes of section 523(a)(4). *Id.* at 818; *In re Sorge*, 566 B.R. 369, 377-78 (Bankr. E.D.N.C. 2017) (quoting *In re Pemstein*, 492 B.R. 274, 281 (B.A.P. 9th Cir. 2013) ("Case law makes clear that the broad, general definition of fiduciary—a relationship involving confidence, trust and good faith—is inapplicable in the dischargeability context.…Instead, § 523(a)(4) nondischargeability results only where, among other things, the fiduciary relationship between the debtor and the creditor arises in relation to an express or technical trust that pre-dates the alleged defalcation." (internal citation omitted))). Section 523(a)(4) generally does not apply in the context of resulting or constructive trusts.

In this case, the Plaintiffs made no allegations of the existence of an express trust in their Complaint to create a "fiduciary" relationship as contemplated by section 523(a)(4). *See generally* Pls.' Compl. No trust relationship existed here, and even if one did, it would have been the imposition of a constructive trust which does not qualify to create a fiduciary relationship under section 523(a)(4). Accordingly, the Debtor was not a "fiduciary" for purposes of section 523(a)(4). Thus, for the Fredericksburg Judgment to be excepted from discharge under this subsection, the debt must have arisen either from embezzlement or fraud.

For a debt to be declared nondischargeable under section 523(a)(4) because it arises from embezzlement, the Fourth Circuit requires the plaintiff to prove: "(1) that the funds were rightfully in the possession of the Debtor; (2) that the Debtor appropriated the funds for a use other than that for which it was entrusted; and (3) circumstances indicating fraud." *In re Parker*, 141 F.4th 583, 587 (4th Cir. 2025) (internal citations omitted). The Plaintiffs cannot prove that the Fredericksburg Judgment should be excepted from discharge on the basis of embezzlement because element one

19

cannot be satisfied.  The Plaintiffs themselves maintain the Debtor was never in rightful possession of the life insurance proceeds from the moment Prudential disbursed them to her.  Counsel for the Plaintiffs conceded at trial that the life insurance proceeds were not embezzled because, according to counsel, the Debtor was not in lawful possession of the funds.  Accordingly, for the Plaintiffs to prevail under section 523(a)(4), the debt must be for larceny.

This Court previously held, and reaffirms here, that the federal common law definition of larceny applies to section 523(a)(4) nondischargeability actions.  *In re Shreve*, 386 B.R. 602, 607 (Bankr. W.D. Va. 2008) (J. Krumm) (internal citations omitted).  The federal common law defines larceny as the "fraudulent taking and carrying away [of] the property of another with intent to convert such property to the taker's use without the consent of the owner."  *Id*. (internal citations omitted).   Other bankruptcy courts in the Fourth Circuit have similarly adopted the federal common law definition.  *In re Wilkerson*, 644 B.R. 349, 372 (Bankr. E.D. Va. 2022); *In re McKnew*, 270 B.R. 593, 632 (Bankr. E.D. Va. 2001); *In re Davis*, 262 B.R. 663, 672 (Bankr. E.D. Va. 2001).  In contrast to embezzlement, larceny requires that felonious intent existed at the time the taking of the property occurred.  *Wilkerson*, 644 B.R. at 372; *In re Aman*, 498 B.R. 592, 606-07 (Bankr. N.D.W. Va. 2013) (citing 4 *Collier on Bankruptcy* ¶ 523.10[2]).

For the reasons discussed above, the Plaintiffs failed to prove that the Debtor possessed the requisite *mens rea* at the time she acquired the life insurance proceeds for the taking to constitute larceny.  The Debtor asserted that, at the time she completed the application with Prudential and designated herself as beneficiary, she believed paragraph eighteen of the separation agreement had been removed.  Thus, the Debtor believed she had not assigned her right to the proceeds to the children and that she was the beneficiary.  The Plaintiffs failed to rebut this claim.  Accordingly, the Plaintiffs failed to meet the burden of establishing by a preponderance of the evidence that the

20

Debtor had the requisite felonious intent at the time she took the life insurance proceeds to establish that the Fredericksburg Judgment is for larceny under section 523(a)(4).

As the Plaintiffs failed to meet their burden of proving by a preponderance of the evidence that the Fredericksburg Judgment is for "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny," the Plaintiffs' objection to dischargeability under section 523(a)(4) is therefore overruled.

c.   11 U.S.C. § 523(a)(6) Claim

Section 523(a)(6) provides that the Bankruptcy Code will not discharge a debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The United States Supreme Court concluded in *Kawaauhau v. Geiger* that the language of section 523(a)(6) requires that the Debtor acted with the actual intent to cause the injury, not merely with the intent to commit the act that led to the injury. 523 U.S. 57, 61-62 (1998); *In re Duncan*, 448 F.3d 725, 729 (4th Cir. 2006). "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Geiger*, 523 U.S. at 64. The creditor must prove three elements to prevail in having a debt declared nondischargeable under section 523(a)(6): "(1) the debtor caused an injury; (2) the debtor's actions were willful; and (3) that the debtor's actions were malicious." *In re Wooten*, 423 B.R. 108, 128 (Bankr. E.D. Va. 2010) (citing *In re Sparrow*, 306 B.R. 812, 834 (Bankr. E.D. Va. 2003) (internal citations omitted)). The Plaintiffs have failed to prove that element two—willfulness—is satisfied. "[T]o qualify as willful for purposes of section 523(a)(6), the debtor must: 1) commit an intentional tort, *not* a negligent or reckless tort, and 2) the intentional tort must be conduct substantially certain to result in injury or be motivated by a desire to inflict injury." *In re Eppard*, 502 B.R. 458, 464 (Bankr. W.D. Va. 2012) (emphasis in original).

21

The tort at issue alleged here is conversion.  Although the claim of conversion was pled by the Plaintiffs during the State Court Suit, the Fredericksburg City Circuit Court never reached the merits of the claim.  Instead, the state court determined it was barred by Virginia's statute of limitations.  DR's Ex. EE, at 2.  Accordingly, the Debtor's mental state was not litigated during the State Court Suit.[6]  Thus, the State Court Suit has no preclusive effect under the doctrine of collateral estoppel to this Court's determination of the Debtor's intent.  *Scales*, 261 Va. at 382, 541 S.E.2d at 902.

For the reasons discussed above, the Plaintiffs failed to meet their burden of proving by a preponderance of the evidence that the Debtor acted with actual intent to cause injury to the Plaintiffs as required by *Geiger*.  The Plaintiffs failed to prove that the Debtor knew that she had assigned her right to the proceeds under the Prudential life insurance policy to Mary and Matthew pursuant to the separation agreement.  Therefore, she could not have acted with the actual intent to cause the injury that occurred—the conversion of the life insurance proceeds.  Although she clearly acted with the intent to commit the act leading to the conversion of the proceeds by completing the life insurance application and submitting it to Prudential to collect, *Geiger* requires more to have the Fredericksburg Judgment excepted from discharge under section 523(a)(6).

Accordingly, since the Plaintiffs failed to satisfy the heightened *Geiger* standard to declare the Fredericksburg Judgment nondischargeable under section 523(a)(6), the objection is overruled.

d.   11 U.S.C. § 523(a)(5) Claim

Section 523(a)(5) provides that the Bankruptcy Code will not discharge a Chapter 7 debtor from any debt "for a domestic support obligation."  11 U.S.C. § 523(a)(5).  The term "domestic support obligation" is defined as "a debt that accrues before, on, or after the date of the

---

[6] Again, a default judgment was entered without elaboration after the claims for a money judgment were dismissed as time barred.

[petition]…as provided under applicable nonbankruptcy law…that is owed to or recoverable by a…child of the debtor…*in the nature of alimony, maintenance, or support*…of such…child of the debtor…established…[by] a separation agreement [or] divorce decree." 11 U.S.C. § 101(14A) (emphasis added).

Fourth Circuit courts look at the mutual or shared intent of the parties to create a support obligation when determining whether an obligation is in the nature of alimony, maintenance, or support. *In re Johnson*, 397 B.R. 289, 297 (Bankr. M.D.N.C. 2008); *In re Combs*, 543 B.R. 780, 794 (Bankr. E.D. Va. 2016) (citing *Tilley v. Jessee (In re Tilley)*, 789 F.2d 1074, 1078 (4th Cir. 1986)). At least four courts in the Fourth Circuit have adopted a four-factor test to evaluate the intent of the parties to create a support obligation:

> (1) the actual substance and language of the agreement, (2) the financial situation of the parties at the time of the agreement, (3) the function served by the obligation at the time of the agreement (i.e., daily necessities), and (4) whether there is any evidence of overbearing at the time of the agreement that should cause the court to question the intent of a spouse.

*Johnson*, 397 B.R. at 297 (citing *In re Catron*, 164 B.R. 912, 919 (E.D. Va. 1994) (internal citations omitted)); *Combs*, 543 B.R. at 794; *In re Deberry*, 429 B.R. 532, 539 (Bankr. M.D.N.C. 2010). This is a non-exhaustive list, so courts should consider all relevant evidence. *Johnson*, 397 B.R. at 297 (internal citations omitted). Importantly, "[t]he labels attached to certain provisions in a separation agreement are not dispositive of their 'nature,' but the labels are persuasive evidence of the parties' intent." *Id.* (citing *Tilley*, 789 F.2d at 1077-78). Although it is not determinative on the issue, when the plain language of a separation agreement labels an obligation to be "in the nature of alimony, maintenance, or support," a "substantial obstacle" exists which the party contesting that the debt is nondischargeable under subsection (a)(5) must overcome. *Tilley*, 789 F.2d at 1078.

23

Applying this four-factor test and considering other relevant factors, this Court finds that the Fredericksburg Judgment is a domestic support obligation as it is in the nature of alimony, maintenance, or support.

### i.      The actual substance and language of the agreement

Factor one weighs strongly in favor of deeming this a domestic support obligation, as the agreement explicitly labeled the life insurance proceeds to be nondischargeable in the event of bankruptcy under section 523(a)(5) in paragraphs twenty-two and twenty-three of the separation agreement.   In pertinent part, paragraph twenty-two provides: "The Husband's and Wife's agreement to pay said obligations hereinbefore or hereinafter provided for [word illegible] this Agreement on behalf of one another shall be considered to be in the nature of alimony, and shall, therefore, be nondischargeable in bankruptcy under 11 U.S.C. Section 523(a)(5)."  Pls.' Ex 2 at ¶ 22.  Paragraph twenty-three then provides, in pertinent part:

> The parties further covenant, warrant and agree that all hold harmless provisions, debt assumption agreements and/or agreements to pay attorney's fees and costs specified in this Agreement, which is a "separation agreement" as contemplated by 10 [sic] USC §523, shall not be dischargeable in bankruptcy as they are intended by the parties to be in the nature of alimony, maintenance and support.

*Id.* at ¶ 23.

It is indisputable that the express language of the separation agreement labels the life insurance obligation from which the Fredericksburg Judgment arises to be a nondischargeable domestic support obligation, as contemplated by section 523(a)(5).   As the Fourth Circuit explained in *Tilley*, this creates a "substantial obstacle" the Debtor must rebut.  Furthermore, the Debtor and Edward labeled the life insurance obligation to be a section 523(a)(5) obligation in not only one, but two separate paragraphs of the separation agreement—further evidencing their mutual intent and requiring the Debtor to meet a heightened burden to overcome the obstacle that

24

the Fredericksburg Judgment is not a domestic support obligation.  The only evidence that the Debtor provided to support a claim that the parties did not share a mutual intent for the life insurance obligation to be a section 523(a)(5) obligation was the Debtor's claims that Edward was in poor mental health at the time of the separation agreement's execution and that he hardly participated in negotiations, as he was not represented by counsel during the divorce.  If these claims are accepted as true, although they may weigh in favor of negating mutual intent between Edward and the Debtor to create an obligation in the nature of alimony, maintenance, or support, they nevertheless support a finding that the Fredericksburg Judgment is a domestic support obligation because they weigh in favor of factor four (evidence of overbearing).  However, these assertions without more—such as medical records or other evidence to show that Edward was incapable of forming the intent to create an obligation in the nature of alimony due to his mental illness and lack of representation—is not sufficient evidence to overcome the Debtor's "substantial obstacle" of proving the Fredericksburg Judgment should not be classified in accordance with the express language of the separation agreement.

Accordingly, factor one weighs against the Debtor.

### ii.     The financial situation of the parties at the time of the agreement

Factor two weighs against the Debtor because all parties testified that the Debtor was the primary wage earner between the two spouses, and Edward had minimal financial resources at the time of the separation.

During the trial, Mary explicitly testified that Edward had no financial resources at the time of the divorce.  Although the Debtor's testimony did not specifically address whether Edward was insolvent at the time of the divorce, it did corroborate that there was significant disparity between their relative financial positions at the time the separation agreement was executed and the divorce

25

finalized. Namely, the Debtor testified that at the time she had a lucrative job as an accountant and that she assumed responsibility for her and Edward's debts as part of the separation agreement—evidently due to her superior financial position. Accordingly, the second factor weighs against the Debtor. *Contra In re Bruce*, No. 16-60489, 2016 WL 4626126, at \*5 (Bankr. W.D. Va. Sept. 6, 2016) (finding that the second factor weighed in favor of the debtor because the evidence presented did not show that the debtor was in a superior financial position as compared to his ex-spouse when entering into a property settlement agreement as part of their divorce).

### iii. *The function served by the obligation at the time of the agreement (i.e., daily necessities)*

Factor three is neutral. At the time of the separation agreement's execution, paragraph eighteen regarding the life insurance proceeds served no support obligation to the children. Mary's and Matthew's rights to the life insurance proceeds had not vested, and they quite possibly may never have vested. Pursuant to the separation agreement, the Debtor was only obligated to designate the Plaintiffs as beneficiaries until Mary graduated college. Pls.' Ex. 2 at ¶ 18. Thus, the Plaintiffs' rights would never have vested if either the Debtor changed the beneficiary designation upon Mary graduating college, or if they predeceased Edward. The life insurance proceeds in no way were providing support to Mary and Matthew for basic necessities such as food, clothing, or housing at the time the separation agreement was executed. But the insurance proceeds would have been there to help Mary with her education if Edward passed away while she was in college. Factor three, on balance, sways in favor of neither party.

> ### iv.    *Whether there is any evidence of overbearing at the time of the agreement that should cause the court to question the intent of a spouse*

Factor four weighs against the Debtor and in favor of classifying the life insurance provision from which the Fredericksburg Judgment arises as a nondischargeable domestic support obligation for two reasons.

First, the Debtor and Mary testified during trial that Edward was not represented by counsel during the negotiation of the settlement agreement that was incorporated into the final divorce decree. This testimony is corroborated by the divorce decree itself which is only endorsed by the Debtor's divorce counsel. Pls.' Ex. 1, at 7. Accordingly, this supports a finding that factor four should weigh against the Debtor, as she was in a position of superior bargaining power and had a more advanced understanding of the law by virtue of her divorce counsel's guidance; however, the Debtor failed to revise the language of the separation agreement to reflect the classification of the life insurance provision that she now seeks to attribute to it. *Bruce*, 2016 WL 4626126, at \*7 (finding whether only one spouse versus both spouses are represented by counsel during the separation settlement negotiations to be relevant as to whether there is any evidence of overbearing at the time the agreement was executed). The Debtor had ample opportunity and resources when the separation agreement was drafted and executed to change the language of it. Although she says she instructed her attorney to change it, it did not change. She now asks this Court to change the meaning of the language included in such agreement because it is now beneficial to the Debtor to diverge from the explicit and plain meaning of the language included. The Court declines to do so.

Second, the Plaintiffs and the Debtor testified at trial that Edward suffered from serious mental health issues that ultimately led to his death. Mary's testimony during trial was that despite

27

his mental health issues and limited financial resources, when the separation agreement was negotiated, the singular thing Edward requested was for the children to receive the life insurance proceeds. This is indicative of Edward's intent for the life insurance provision to be in the nature of maintenance or support of his children—the Plaintiffs. The Debtor now seeks to take advantage of Edward's deficient mental health to discharge the debt the state court has already determined she owes, as evidenced by the Fredericksburg Judgment. Factor four weighs in favor of classifying the Fredericksburg Judgment as a domestic support obligation.

For the reasons set forth above, the Plaintiffs sufficiently proved that the life insurance provision the Fredericksburg Judgment is based on created a domestic support obligation, as three of the four factors weigh in favor of this classification. Accordingly, the Court finds that the Fredericksburg Judgment is nondischargeable pursuant to section 523(a)(5).

e.   11 U.S.C. § 523(a)(15) Claim

Section 523(a)(15) provides that the Bankruptcy Code will not discharge a debtor from any debt "to a…child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement [or] divorce decree." 11 U.S.C. § 523(a)(15). Even if the section 523(a)(5) standard is not met as a domestic support obligation, section 523(a)(15) applies.

For a debt to be deemed nondischargeable under this subsection, three requirements must be met. "[T]he debt must (1) be to a spouse, former spouse, or child of the debtor, (2) not be a domestic support obligation, and (3) have been incurred during a divorce or separation or 'in connection with a separation agreement, divorce decree, or other order of a court of record.' " *Burstein v. Nonte*, 688 F.Supp.3d 314, 317 (E.D. Va. 2023) (quoting 11 U.S.C. § 523(a)(15); then citing *In re Monassebian*, 643 B.R. 388, 393 (Bankr. E.D.N.Y. 2022)).

28

"[T]he legislative history indicates that Congress added § 523(a)(15) to broaden the scope of marital debts that are nondischargeable to ensure that a debtor [will] 'not use the protection of a bankruptcy filing in order to avoid legitimate marital and child support obligations.' " *Id.* (quoting H.R. Rep. No. 103-825, at 54). BAPCPA eliminated two statutory defenses to section 523(a)(15) that allowed the debtor to argue "discharge was appropriate either based on their inability to pay, or that discharge would result in a benefit to the debtor that would outweigh the cost to the former spouse." *Id.* (citing *In re Taylor*, 478 B.R. 419, 428 (B.A.P. 10th Cir. 2012)). Thus, given the statutory history and Congress's decision to remove any qualifying defenses for section 523(a)(15), at least one district court within the Fourth Circuit has held that this subsection should be broadly construed in favor of payment of familial obligations over giving the debtor a fresh start. *Id.* at 319. The *Burstein* Court further held that "in connection with" should be interpreted "liberally to mean a logical or causal relationship with a separation agreement." *Id.*

Here, the debt is owed to the Debtor's two children. If the Fredericksburg Judgment does not qualify as a domestic support obligation, it meets the remaining parameters of section 523(a)(15). Although the debt arises from a contingent claim—the death of Edward while Mary was still in college—at the time the separation agreement was executed, given that "in connection with" should be interpreted liberally post-BAPCPA, the Court finds that there is a sufficient logical relationship between the separation agreement and the life insurance proceeds that the Fredericksburg Judgment meets the standard for nondischargeability.

Accordingly, if the Debtor's obligations under the separation and divorce decree are not in the nature of a domestic support obligation, since the elements of section 523(a)(15) are satisfied, the Court finds that the Fredericksburg Judgment is nondischargeable under section 523(a)(15) and the Plaintiffs' claim of nondischargeability under this subsection is granted.

29

*Conclusion*

For the reasons stated above, the Plaintiffs' claims of nondischargeability of the judgment under 11 U.S.C. § 523(a)(2), 11 U.S.C. § 523(a)(4), and 11 U.S.C. § 523(a)(6) are overruled; the Plaintiffs' claims of nondischargeability under 11 U.S.C. § 523(a)(5) or, alternatively, 11 U.S.C. §523(a)(15) are sustained.  Therefore, the judgment is nondischargeable.

A separate order will be entered contemporaneously herewith.

**END OF ORDER**